Theodore **BAKER**, Plaintiff,

v.

Bernard **ZLOCHOWON**, individually and in his official capacity; Ray Morgan, individually and in his official capacity, Defendants.

No. 88 CIV 8665 (LBS).

United States District Court, S.D. New York.

June 29, 1990.

---

*re Gas Reclamation, Inc. Securities Litig.*, 733 F.Supp. 713, 723 (S.D.N.Y. 1990).

Robert F. Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Melissa Saren, Asst. Atty. Gen., of counsel.

## OPINION

SAND, District Judge.

A *pro se* prison inmate brings this action under 42 U.S.C. § 1983, claiming that two prison officials engaged in a pattern of harassment in retaliation for his commencement of law suits. The prison officials move for summary judgment, claiming that their actions were undertaken at least in part for valid institutional reasons, that they are entitled to qualified immunity, and that plaintiff is collaterally estopped from raising parts of his claim. Defendants also move to amend their answer.

### I. *Background*

Plaintiff Baker is an inmate confined to the Green Haven Correctional Facility. Defendant Raymond Morgan, a civilian employee of the New York State Department of Correctional Services, works under the Superintendent of Industry at Green Haven overseeing the operations of all the Industries Shops, which are components of a profit-making corporation which employs inmates. Defendant Bernard Zlochower (sued herein as "Zlochowon"), also an employee of the New York State Department of Correctional Services, works under defendant Morgan as the General Industrial Training Supervisor at Green Haven.

According to plaintiff, he has been employed in the prison upholstery shop since July 6, 1983, first as an upholsterer and then as a clerk. In this capacity, plaintiff had reached a pay grade of 4.3. When plaintiff learned that the point value system for the shop was to be changed, he filed a grievance along with other inmates. Some time thereafter, plaintiff noticed that "his hours of work were short." Plaintiff's supervisor, Mr. Tinsley, informed him that defendant Morgan had deducted an hour of pay because plaintiff had failed to punch his time card in or out. Plaintiff alleges that pursuant to defendant Morgan's own rules only a half an hour should have been

Theodore Baker, pro se.

deducted. Baker Affidavit ("Baker") at 1. Defendant Morgan affirms that two hours of pay were deducted from plaintiff's paycheck, one for not punching in his time card on August 16, 1987 and another for punching in other inmates' cards on September 6, 1987. Morgan Affidavit ("Morgan") ¶ 7. Though the rules suggest that an inmate is to lose ½ hour for his first infraction and 1 hour for a second infraction, Morgan Exhibit B, the record does not indicate whether plaintiff's August 16, 1987 infraction was his first.

Plaintiff alleges that on October 21, 1987 defendant Zlochower came to the shop with forms for several other inmates to sign for failing to punch in or out. In Zlochower's presence, plaintiff then assisted these other inmates with grievance forms, writing Zlochower's name on the forms. Later, when plaintiff and other inmates were discussing Morgan's behavior with respect to the pay deductions, Zlochower allegedly "rushed over, stating 'you all are no lawyer, I give you all a direct order to get to work.'" Plaintiff also indicates that he had several other similar confrontations with Zlochower in October 1987.

By petition dated May 26, 1988, plaintiff and other inmates instituted a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules in state court to challenge the time card penalties as violative of their due process rights. The petition was dismissed on July 14, 1988, and the dismissal was affirmed by the Appellate Division on January 16, 1990.

Plaintiff maintains that on February 10, 1988, Morgan watched him prepare part of his complaint for the Article 78 proceeding, asked if he was getting a copy, and then responded that it would come to him to answer anyway. Months later, Morgan apparently came to the shop, handed plaintiff an envelope with his answer to the complaint and told plaintiff that he had told him it would come back to him to answer. Plaintiff further contends that some time in May 1988 Morgan told him that he hoped plaintiff's family had money because he would sue them if plaintiff put "his name on another paper." Another inmate corroborates plaintiff's account of this last confrontation. *See* Cook Affidavit at 2.

Plaintiff alleges on the week of October 18, 1987 his bonus pay was $1.91 short. He indicates that he was assured by Mr. Tinsley that Morgan had said it would be in his next paycheck. When plaintiff did not see the money in his next paycheck, he spoke with Morgan who allegedly told him "he was on first names with the Governor and Commissioner, that I was not getting paid until he was ready and that might be never." Morgan contends that he investigated the complaint, found the error, and learned that the amount had already been added to plaintiff's salary. Morgan ¶ 8.

Plaintiff alleges that beginning the week of June 12, 1988 he stopped receiving pay for time spent participating on an "Inmate Liaison Committee." When plaintiff complained to Commissioner Coughlin, he apparently started to get paid again. Plaintiff maintains that the payment stopped again when defendant Morgan was served with the complaint in this action. Morgan points out that pursuant to a prison directive inmates are to be paid for absences due to participation on a "grievance committee," but not for absences due to participation on a "liaison committee." Morgan ¶ 10; Exhibit F at 5.

Plaintiff alleges that several more confrontations with Morgan took place during August of 1988. On one occasion Morgan allegedly told the staff at the shop that plaintiff was to make chairs, not do clerk work. On another occasion, Morgan allegedly threatened plaintiff that if he did not make a chair, his pay grade would be reduced.

From August 19, 1988 until September 12, 1988 petitioner was absent from the shop because he was serving a sentence of confinement in the Special Housing Unit at Green Haven for a disciplinary violation. Plaintiff alleges that he specifically asked that he be given 25 days confinement, not 30, so he would not lose his job. During plaintiff's absence, Zlochower allegedly started telling inmates that plaintiff was "not coming back to the shop."

Another inmate, Juan Pacheco, affirms that he and Mr. Tinsley agreed that Pacheco would work in plaintiff's job until plaintiff returned. Pacheco also affirms that on one occasion Morgan raised the possibility of Pacheco keeping the job permanently and that he rejected Morgan's suggestion. Pacheco further affirms that after plaintiff's confinement ended Zlochower asked Pacheco to keep the job and that he again refused citing the agreement with Tinsley. Pacheco also indicates that at a subsequent meeting with Morgan and Zlochower, Morgan told him explicitly that the shop could have a clerk and that it could be Pacheco but not plaintiff. The parties do not dispute that at some point it was decided that the shop would no longer employ a full time clerk. While Morgan states that this decision was made for the sake of "efficiency," Morgan ¶ 10, plaintiff argues that it was to prevent him from having the job. It is also undisputed that when plaintiff returned to the shop, he was assigned to work at upholstery tables with a salary grade level of 2.3, instead of 4.3. Morgan suggests that this was the highest grade position for which there was a vacancy at the time. Morgan ¶ 10.

Petitioner filed a grievance in connection with his job change and received a response indicating that his grievance had been researched and that the investigator agreed that "grievant [was] much more valuable as a upholsterer than a clerk." Plaintiff proceeding *pro se* commenced this action on October 31, 1988 pursuant to 42 U.S.C. § 1983, alleging that defendant had retaliated against him for exercising his constitutional rights.

## II. *Discussion*

Fed.R.Civ.P. 56(c) stipulates that a motion for summary judgment is to be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The Court should not "resolve disputed issues of fact" but should "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, ·804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). At the same time, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Plaintiff appears to allege that defendants' actions constitute a pattern of harassment in retaliation for plaintiff's efforts to seek redress from prison authorities and courts on behalf of himself and other inmates. Plaintiff's Rule 3(g) Statement. It is well established a claim for relief can be stated under section 1983 for job reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his legal rights or for helping other inmates to petition for redress of their grievances. *Gill v. Mooney*, 824 F.2d 192, 194–95 (2d Cir.1987); *Jackson v. Cain*, 864 F.2d 1235, 1248–49 (5th Cir. 1989); *Harris v. Fleming*, 839 F.2d 1232, 1236–1238 (7th Cir.1988); *Rizzo v. Dawson*, 778 F.2d 527, 531–32 (9th Cir.1985). Indeed, any "otherwise routine administrative decision" made in retaliation for the exercise of constitutional rights could give rise to a cause of action. *Gill*, 824 F.2d at 194; *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986).

■ In order to prevail on a claim of retaliation for the exercise of constitutional rights, plaintiff must show that the allegedly retaliatory action "would not have been taken *but for* the exercise of such rights," *Jones v. Coughlin*, 696 F.Supp. 916, 920 (S.D.N.Y.1988); *Hilliard v. Scully*, 648 F.Supp. 1479, 1487 (S.D.N.Y.1986), and must include factual allegations with a "high level of detail." *Gill*, 824 F.2d at 194. If the retaliatory actions would have been taken on a constitutionally valid basis in any event, summary judgment is warranted. *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.1984) (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

The affidavits offered by plaintiff set forth sufficient facts for the Court to conclude that there are genuine issues for trial. It is apparent from plaintiff's allega-

tions that he is something of a "jailhouse lawyer." It is also apparent that defendants have paid close attention to plaintiff's legal activities and have viewed them with concern. Plaintiff describes what amounts to threats and intimidation by defendants in connection with his naming them as parties in legal actions. The sequence of events described by plaintiff also suggests a possible correlation between the actions taken by defendants and plaintiff's legal activities. *See Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir.1987) ("chronology of events from which retaliatory animus on part of the defendants could be inferred" sufficient to overcome motion to dismiss). For example, plaintiff alleges that he first ceased being paid for the time he spent participating in the inmate liaison committee shortly after he commenced his Article 78 action and then stopped receiving the pay again when he commenced this action. Indeed, another inmate observes that "[a]ll of Mr. Baker [sic] problems started when he started to file his complaints about the taking of his money and other inmates started to do the same." Cook Affidavit.

Though they do not explicitly deny that retaliation took place, defendants counter that each of their actions were undertaken at least in part for valid institutional reasons. At least with respect to the decision not to pay plaintiff for his absences from work due to the Inmate Liaison Committee and the decision to assign him a lower paying job after his return from disciplinary confinement, however, a fact-finder could conclude that defendants' sole motive was to retaliate against plaintiff for naming them in his complaints and that these actions would not have been taken otherwise. Although the prison rules do appear to indicate that plaintiff is not entitled to be paid for absences from work due to meetings of the Liaison Committee, plaintiff's uncontradicted allegation is that he had been getting paid for such absences and that payment stopped only when he filed his Article 78 action and then again when he filed this action. In addition, though defendants argue that the full time clerk position was eventually eliminated for reasons of efficiency, this is wholly contradicted by Juan Pacheco's allegations that before the decision was made he was told no less than four times by one or the other of the defendants that he could keep the full time clerk job and that he was told at least once that plaintiff could not have the job.

Plaintiff's allegations closely resemble those of the plaintiff in *Harris v. Fleming*, 839 F.2d at 1236–38, who was fired from two prison jobs the same month he achieved a remand from the Court of Appeals in a suit against prison personnel. Two days after plaintiff declined to settle a later case, he was fired from a third job and transferred to a cell with a known homosexual. The Court found that the plaintiff's allegations and the timing of the terminations and transfer, standing alone, were sufficient to defeat summary judgment. In this case, in addition to the correlation between the timing of defendants' actions and developments in plaintiffs law suits, plaintiff has recounted a variety of incidents which, if true, establish that defendants were concerned with plaintiff's litigation and were prepared to take steps to hinder it.

■ Defendants contention that they have qualified immunity from suit for damages does not warrant granting their summary judgment motion. Government employees "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Second Circuit has held that at least with respect to transfers in retaliation for exercise of constitutional rights, "a reasonable jury could find that a reasonable commissioner of corrections would be aware of [the illegality of his actions]," and thus might not be able to establish the defense of qualified immunity. *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989). We believe that the same can be said with respect to retaliatory job reassignments.

Defendants move to amend their answer to assert defenses of collateral estoppel and *res judicata*, arguing that some of the issues in this action and in plaintiff's earlier Article 78 proceeding are identical. Though leave to amend a pleading is to be given "when justice so requires," Fed.R.Civ.P. 15(a), it need not be given when the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). A plaintiff is barred from relitigating in a subsequent section 1983 action any issues he had a full and fair opportunity to litigate in a prior state court action. *Allen v. McCurry*, 449 U.S. 90, 94–99, 101 S.Ct. 411, 414–417, 66 L.Ed.2d 308 (1980). Although there is a slight overlap between the facts which provide the basis for the claims in this action and the Article 78 proceeding, the issues involved are entirely different. In the Article 78 proceeding, a group of inmates challenged the time-card procedures at Green Haven as violative of due process, whereas here plaintiff as an individual alleges that two prison officials engaged in a pattern of retaliation for his exercise of his constitutional rights. Because we believe that there is no basis whatsoever for defendants' affirmative defenses, an amendment to their pleading would be futile.

### III. *Conclusion*

For the foregoing reasons, defendants' motions to amend their answer and for summary judgment are denied. The parties are to advise the Court by August 15, 1990 when they will be ready for trial.

SO ORDERED.