**Juan CANDELARIA, Plaintiff,**

v.

**Thomas COUGHLIN, III, Commissioner, Charles Scully, Superintendent, T. Pisco, Correctional Officer, and Lt. Robertson, Defendants.**

**Juan CANDELARIA, Plaintiff,**

v.

**Thomas COUGHLIN, III, Commissioner, et al., Defendants.**

Nos. 91 Civ. 1117 (LBS), 91 Civ. 2978 (LBS).

United States District Court, S.D. New York.

March 17, 1992.

Juan Candelaria, pro se.

Attorney Gen. of the State of N.Y., New York City (Ellen J. Fried and Nancy Miller Lerner (as to Action I), Clement J. Colucci (as to Action II), of counsel), for defendants.

## OPINION

SAND, District Judge.

These two actions are brought under 42 U.S.C. § 1983 by Juan Candelaria, *pro se*, a former inmate of Green Haven Correctional Facility (hereinafter "Green Haven") who is currently incarcerated at Clinton Correctional Facility (hereinafter "Clinton"). Plaintiff's claims in the first action (hereinafter "Action I") arise out of an alleged assault on plaintiff by a correction officer at Green Haven, and a subsequent hearing. Plaintiff alleges violations of his rights under the First, Eighth, and Fourteenth Amendments. In the second action (hereinafter "Action II"), plaintiff makes a number of allegations, but his claims center on inadequate medical treatment in violation of his Eighth Amendment rights.

Defendants in Action I, Thomas A. Coughlin, III, New York State Commissioner of the Department of Correctional Services, Charles Scully, Superintendent of Green Haven, and Correction Officer Thomas Pisco, have moved to dismiss the amended complaint or in the alternative, for summary judgment.[1] In Action II, plaintiff has named as defendants Commissioner Coughlin, Superintendent Scully, and several other prison officials and officers, and members of Green Haven's medical

---

**1.** The amended complaint named Lt. Robertson, the hearing officer, as an additional defendant. However, he has never been served in this ac-tion, and we do not treat him as a party to this case.

staff.[2] Defendants have moved to dismiss the complaint. Plaintiff has filed two motions for preliminary injunction in Action II. For the reasons stated below, defendants' motion in Action I is granted in its entirety. Defendants' motion to dismiss in Action II, as well as plaintiff's motions for a preliminary injunction, are denied.

## BACKGROUND

At the time of the incident at issue in Action I, plaintiff was incarcerated at Green Haven. Plaintiff alleges that on April 4, 1990, he was assaulted by Correction Officer Thomas Pisco when Pisco used a pocket knife to cut a string around plaintiff's neck, on which his identification card hung. Plaintiff claims that this string had religious significance to him, and he alleges that when he tried to remove the identification card himself, Officer Pisco pushed his fist against plaintiff's neck, causing plaintiff to have difficulty breathing.

According to plaintiff, immediately after the alleged assault occurred, he filed a grievance against Officer Pisco as well as two formal requests regarding the incident. Shortly after the incident, Officer Pisco filed a disciplinary report charging plaintiff with the violation of four prison rules. On April 9, 1990, a hearing was conducted before hearing officer Lt. Robertson, at which plaintiff was found guilty of each of the four violations. He was sentenced to 30 days in keeplock, and 30 days loss of other privileges. Plaintiff alleges that he remained in keeplock confinement from April 9, 1990 until May 27, 1990, a period of 48 days. Plaintiff claims that he was confined for the additional 18 days pursuant to the instructions of Officer Pisco and Lt. Robertson, and with the knowledge of defendants Coughlin and Scully.

Plaintiff alleges that defendants abridged his Fourteenth Amendment rights, claiming that the procedures regarding the hearing failed to meet the requirements of due process. Plaintiff also alleges that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment through use of excessive physical force. Plaintiff further claims that the destruction of the string was intentional deprivation of religious property in violation of the free exercise clause of the First Amendment. Finally, plaintiff claims that the disciplinary action and punishment was taken in retaliation for his filing of a grievance, thus violating his First and Fourteenth Amendment rights of freedom of speech and due process.

Plaintiff first filed a complaint in this action on November 13, 1990 against Commissioner Coughlin, Superintendent Scully, and Officer Pisco. On May 1, 1991 defendants Coughlin and Scully moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). In an opinion issued June 18, 1991, this Court granted the motion to dismiss. However, we also granted plaintiff leave to file an amended complaint which attempted to state a claim against Coughlin and Scully. On July 8, 1991, plaintiff filed an amended complaint, and on September 27, 1991, all defendants moved to dismiss the amended complaint, or in the alternative, for summary judgment.

On April 9, 1991, plaintiff commenced Action II, which focuses on inadequate medical treatment. On September 3, 1991, plaintiff filed a motion for a preliminary injunction which requests that defendants be ordered to provide various items for plaintiff's medical needs. On September 27, 1991, defendants filed a motion to dismiss the complaint in its entirety. On January 15, 1992, plaintiff was transferred from Green Haven to Clinton and on January 30, 1992 plaintiff filed a second motion for a preliminary injunction alleging inadequate medical facilities at Clinton, and requesting that defendants be ordered to transfer him back to Green Haven.

## DISCUSSION

### Standard of Review

In deciding a motion to dismiss, the court must look to the four corners of the com-

---

**2.** Service has not been effected upon defendant Raymond Sandford, now retired from the Department of Correctional Services, and we do not treat him as a party to this case.

plaint and accept plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The court will dismiss the complaint only if plaintiff can prove no set of facts that would entitle him to relief.

Section 1983 imposes liability for conduct carried out under the color of state law which deprives a plaintiff of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In order to prevail on a section 1983 claim, a plaintiff must prove that the defendant: (1) acted; (2) under color of state law; (3) in a manner that caused plaintiff to suffer a constitutional deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Kaswan v. Mannings*, 1991 WL 41597, *2, 1991 U.S.Dist. LEXIS 3357, *6 (S.D.N.Y. March 20, 1991).

Summary judgment is appropriate where the moving papers and affidavits submitted by the parties "show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed R.Civ.P. 56(c). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The court's role in such a context is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *See Matshushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nevertheless, the very language of the summary judgment standard provides that "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by reference to the substantive law applicable to the case at hand, and factual disputes irrelevant to its outcome "will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

## I. ACTION I

*The Allegations against Defendants Coughlin and Scully*

As we noted in our previous opinion, it is clear that the authority of defendants Coughlin and Scully, employees and officials within the state prison system, arises under color of state law. The issue remains whether these defendants acted in a manner that violated plaintiff's constitutional rights.

▇ In a section 1983 action, "the defendant must be responsible for the alleged constitutional deprivation: '[t]he general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (a § 1983 plaintiff must demonstrate "personal involvement" of state commissioner of corrections and superintendent of prison, not mere "linkage in the prison chain of command"). A defendant may be "personally involved" in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was "grossly negligent" in managing subordinates who actually caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

In our previous opinion granting the motion to dismiss the original complaint, we found that plaintiff had not alleged adequately the requisite personal culpability of defendants Coughlin and Scully with regard to any of the alleged constitutional violations.

As in the original complaint, plaintiff's amended complaint does not allege that these defendants participated personally in either the incident of April 4, 1990, or the events surrounding the subsequent hearing and punishment. Thus, as in the original complaint, in order for defendants to be liable for depriving plaintiff of his constitutional rights, their conduct must fall within one of the above categories of liability in a supervisory capacity.

■ Plaintiff appears to allege that defendants' conduct fell within the category of failing to remedy a continuing or egregious wrong after learning of a violation. *See* Amended Complaint at ¶¶ 12–13. Plaintiff did inform defendants Scully and Coughlin of his allegations against Officer Pisco. *See* Letter from Plaintiff to C. Scully, April 4, 1990, attached as Exhibit A to Plaintiff's Motion in Response and Opposition of Defendants' Motion for Summary Judgment (hereinafter "Plaintiff's Motion in Opp."); Letter from Plaintiff to Thomas A. Coughlin, April 28, 1990, attached as Exhibit D to Plaintiff's Motion in Opp.

Plaintiff claims that Scully and Coughlin were also aware of his detention in keeplock for 18 days more than his sentence. *See* Amended Complaint ¶ 7.[3] He does not, however, provide any evidence that these defendants were aware of the detention dates.

■ However, even assuming knowledge by these defendants both of the alleged assault and the alleged extension of confinement, mere knowledge by a supervisory official of an employee's conduct is not sufficient to impose supervisory liabili-

ty. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989). As we noted in our prior opinion, claims of defendants' knowledge of alleged constitutional violations are insufficient to impose supervisory liability unless the plaintiff alleges that the episodes were recurring and required that the defendants take action, or that defendants had direct responsibility for monitoring the hearing procedure. *See Johnson v. Glick*, 481 F.2d at 1034; *Wright v. McMann*, 460 F.2d 126, 134–35 (2d Cir.), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). There is no evidence that either of these two situations existed here.

Moreover, the record indicates that the superintendent and his staff responded appropriately to plaintiff's filing of an Inmate Grievance Complaint, both by investigating his claims and by informing him of their conclusions. *See* Inmate Grievance Complaint, attached as Exhibit G to Pisco Aff. On the day of the assault, an investigation was performed by an officer, who interviewed plaintiff, his witnesses and correctional staff. No validity to the accusation was found, and Officer Pisco provided a written report of the incident and the history of the investigation to Superintendent Scully on April 22. *See* Memorandum of T.G. Pisco to C. Scully, attached at Exhibit H to Pisco Aff. Plaintiff's grievance was denied by the Superintendent on May 11, 1990. *See* Exhibit I to Pisco Aff. Plaintiff was given the opportunity to appeal the decision, which he accepted. He first appealed the decision to the Central Office Review Committee. After a full hearing, this Committee sustained the findings of the Superintendent. *See* Decision of Central Office Review Committee, June 13, 1990, attached as Exhibit K to Pisco Aff. Plaintiff then appealed to the New York State Commission of Correction, which denied his appeal. *See* Letter of William G. McMahon, Chair of New York State Com-

---

3. Defendants contend that at the time of the incident at issue in the present case, plaintiff was already in keeplock as the result of a prior incident. The period of the prior sentence was due to end on April 26, 1990, and the sentence imposed after the April 9 hearing was scheduled to run from April 26 until May 26, 1990. *See* Affidavit of Nancy Miller Lerner, Attorney for Defendants, ¶¶ 5–7. Thus, argue the defendants, plaintiff's allegation that he was improperly confined for an additional 18 days is incorrect. *Id.* at ¶ 8.

mission of Correction to Commissioner Coughlin, July 16, 1990, attached as Exhibit L to Pisco Aff. Plaintiff thus exhausted the grievance procedure.

We conclude that plaintiff has failed to adequately allege conduct of defendants Coughlin or Scully that demonstrates personal responsibility for the alleged constitutional violations. We therefore dismiss the amended complaint as to these two defendants.

*Eighth Amendment Charges*

■ It is well settled that the cruel and unusual punishment clause of the Eighth Amendment forbids the "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)); *see also Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). What will constitute such "unnecessary and wanton infliction of pain" varies according to the nature of the alleged constitutional violation. *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The Supreme Court recently articulated the standard to be applied whenever prison officials are accused of using excessive physical force: "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan,* — U.S. —, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *see also Johnson v. Glick,* 481 F.2d at 1033.

In *Hudson,* the Court stated that, while the extent of an injury is relevant in considering whether the use of force was reasonable, when officials use force maliciously and sadistically to cause harm, the Eighth Amendment is violated "whether or not significant injury is evident." *Hudson,* 112 S.Ct. at 1000. However, the Court was careful to point out that "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action," and that some force must be considered *de minimis* for Eighth Amendment purposes. *Hudson,* 112 S.Ct. at 1000; *Johnson v. Glick,* 481 F.2d at 1033 ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

■ Plaintiff alleges that when he told Officer Pisco that he would remove his own identification card, Pisco "pushed his fist against my neck so that I couldn't move and I was losing my breath because of the pressure he was applying." *See* Amended Complaint ¶ 1. Plaintiff alleges that Pisco then took a pocket knife and cut the string on which the card hung from around plaintiff's neck. *Id.*[4]

Construing the claims in the light most favorable to the plaintiff, we do not find them to allege physical force sufficient to constitute an Eighth Amendment violation. In *Hudson,* one corrections officer punched the inmate in the mouth, eyes, chest and stomach while another officer kicked and punched him from behind. *Hudson,* 112 S.Ct. at 997. From this incident, Hudson suffered bruises and swelling of his face, mouth and lip, loosened teeth, and a cracked dental plate. *Id.* 112 S.Ct. at 997. The Court found that such force was not *de minimis* for Eighth Amendment purposes. *Id.* 112 S.Ct. at 1000.

In contrast, in the case at bar, the plaintiff does not allege any repeated or continuous grabbing of the throat, or any choking. Plaintiff does not allege any resulting physical injury. A physician's assistant who examined plaintiff later on the same day of the alleged assault for a different purpose, states that plaintiff made no allegation of injury sustained by an assault at that time. *See* Affidavit of Paul Wilson, Physician's Assistant at Green Haven, ¶¶ 6, 10 (hereinafter "Wilson Aff."). After a nurse informed him that plaintiff had alleged an assault, the assistant re-examined

---

**4.** Officer Pisco contends that he received plaintiff's identification card with the attached string from another officer. He states that, after explaining to plaintiff that it was a violation of prison rules to tamper with his identification card, he cut the string with a pocket knife, gave the string to the inmate and retained the card. Pisco denies having physical contact with plaintiff at any time. *See* Affidavit of Thomas A. Pisco, ¶ 5 (hereinafter "Pisco Aff.").

plaintiff and found no redness, bruising, swelling or other indication of physical injury to his ears or neck. *See* Wilson Aff. ¶¶ 6, 11. Taking plaintiff's description of the incident as true, we find the alleged force to be *de minimis* for Eighth Amendment purposes, consistent with the Court's ruling in *Hudson*. Therefore, we dismiss the plaintiff's Eighth Amendment claim.

*Allegations of Due Process Violations*

Plaintiff alleges a number of due process violations concerning the April 9 hearing, including: failure to receive prior notification of the charges against him; lack of opportunity to comment on the charges; designation of an assistant for the hearing not of plaintiff's choosing and over his objection; inadequate statement of reasons for the hearing officer's decision; and failure of the hearing officer to act fairly and impartially. *See* Amended Complaint ¶¶ 9, 11.

■■■■ An inmate has a number of due process rights with respect to disciplinary proceedings, including advance written notice of the charges, an impartial hearing officer, and in certain instances, the right to present witnesses and evidence. *See Wolff v. McDonnell*, 418 U.S. 539, 555–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin*, 698 F.2d 112, 121–22 (2d Cir.1983). The documentary evidence conclusively demonstrates that plaintiff did receive advance notice of the charges against him. On April 4 Officer Pisco submitted an Inmate Misbehavior Report which listed the specific violations with which plaintiff was charged, and described the charges. *See* Inmate Misbehavior Report, attached as Exhibit B to Pisco Aff. (copies in English and Spanish). A Hearing Record Sheet signed by the plaintiff states that the charges were translated and served to plaintiff on April 6, 1990. *See* Hearing Record Sheet, attached as Exhibit D to Pisco Aff.

This Hearing Record Sheet further states that plaintiff entered a separate plea for each charge, and that he was present at the hearing where two witnesses testified on his behalf. *See id.* An Inmate Assistance Form indicates that on April 5 two corrections officers and a counselor were offered to plaintiff for assistance in hearing preparation, although plaintiff refused to sign the form. *See* Inmate Assistance Form, attached as Exhibit C to Pisco Aff. (Spanish language version). The Hearing Record Sheet indicates that the counselor did serve as assistant as well as interpreter to plaintiff at the hearing. *See* Hearing Record Sheet. The record is clear that plaintiff did have an opportunity to comment on the evidence against him.

The Hearing Disposition Rendered Form states that the evidence relied upon by the hearing officer was the Inmate Misbehavior Report and Officer Pisco's testimony at the hearing. *See* Hearing Disposition Rendered Form, attached as Exhibit E to Pisco Aff. Plaintiff was present for Officer Pisco's testimony. *See* Hearing Record Sheet. The Hearing Disposition Rendered Form informed plaintiff of his right to appeal. Plaintiff did appeal and on April 19, 1990, the first Deputy Superintendent affirmed the disposition. *See* Memorandum from C. Artuz to Plaintiff, April 19, 1990, attached as Exhibit F to Pisco Aff. Thus, the documentary record shows that plaintiff was informed of the basis of the disposition and of his appellate rights.

Finally, though plaintiff alleges that the hearing officer was not impartial, he offers no evidence to support this charge, and the documentary record provides no indication of any impropriety. In discussing the showing required to defeat a motion for summary judgment, the Second Circuit has said, "upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. American Broadcasting Companies*, 892 F.2d 1128, 1132 (2d Cir.1989). The non-moving party must offer " 'concrete evidence from which a reasonable juror could return a verdict in his favor.' " *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). We do not believe that

plaintiff's conclusory allegations regarding the hearing officer's lack of impartiality meets the standard necessary to defeat summary judgment. *See Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (conclusory allegation of hearing officer bias will not sustain a claim of violation of due process).[5]

In conclusion, we find that plaintiff has not raised any genuine issue of material fact regarding his due process rights in the disciplinary hearing. We therefore grant defendants' motion for summary judgment on plaintiff's Fourteenth Amendment due process claims.

*Allegation Concerning Destruction of Religious Property*

Plaintiff alleges that the string on which his identification card was hanging held religious significance for him, so that Officer Pisco's cutting of the string "intentionally deprived plaintiff of his personal religious property," thus violating the free exercise clause of the First Amendment. *See* Complaint ¶ 25; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 5 (hereinafter "Plaintiff's Mem. of Law").

■■■■■■ It is well established that inmates do possess First Amendment rights, including protection against laws that prohibit the free exercise of religion. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Cruz v. Beto,* 405 U.S. 319, 321–22, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). However, when a prison rule impinges on those rights it will be upheld "if it is reasonably related to legitimate penological interests," a standard lower than that ordinarily applied to infringements on fundamental constitutional rights. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *O'Lone,* 482 U.S. at 349, 107 S.Ct. at 2404. The *Turner* Court outlined four factors relevant to determining the reasonableness of a regulation or its implementation: a) whether

there is a rational connection between the regulation and the legitimate governmental interest invoked to justify it; b) whether alternative means of exercising the right remain open to inmates; c) the impact accommodation of the asserted right will have on allocation of prison resources; d) the absence of ready alternatives. *Id.* at 89–90, 107 S.Ct. at 2262.

■■■■■ Plaintiff states that the string cut by Pisco is a religious symbol representing the Catholic Church. *See* Plaintiff's Motion in Opp. ¶ 7. He states that a cross was attached to it, *see id.* ¶ 6, and a photocopy of the string does reveal a cross made of string attached to the main string. *See* Exhibit J to Plaintiff's Mem. of Law.[6]

There appears to be no dispute that Officer Pisco returned the string to the plaintiff. *See* Pisco Aff. ¶ 5; Exhibit J to Plaintiff's Mem. of Law (photocopy of string provided by plaintiff). There is no evidence that the cutting of the card off the string interfered with plaintiff's exercise of his religion.

It is uncontested that Officer Pisco cut the string in order to retrieve plaintiff's identification card. The regulation at issue states that "inmates shall not alter, deface, or in way tamper with the issued ID card." *See* Inmate Rule 110.20, attached as Exhibit A to Pisco Aff. The need for prison officers to have access to inmate identification cards, and for officers to be able to identify an inmate readily from those cards is obvious. The regulation against tampering itself is rationally connected to a legitimate government security interest, and Officer Pisco's implementation of that regulation by cutting the card from the string is rationally related to the prison administration's need for access to inmate cards. Thus, it is clear that the first *Turner* factor is satisfied. Because plaintiff has not articulated how the cutting of the string infringed on his right to practice

---

5. Moreover, this allegation appears to be directed solely against the hearing officer Lt. Robertson, who was not served, and thus is not a party to this action.

6. Pisco denies that any objects beside the identification card were hanging from the string at the time of the April 4 incident. *See* Pisco Aff. ¶ 5.

religion, we cannot evaluate the other *Turner* factors.

In *O'Lone,* a group of prisoners who practiced the Islamic faith challenged policies adopted by prison officials which resulted in preventing them from attending a weekly Muslim congregational service that is compulsory under the Koran. *See O'Lone,* 482 U.S. at 345, 107 S.Ct. at 2402. Though the Court did not question that the inmates' sincere religious beliefs compelled attendance at this service, it held that the regulations did not violate the inmates' First Amendment rights. This was true despite the fact that the regulations provided the inmates with no alternative means of attending the service: "[w]hile we in no way minimize the central importance of Jumu'ah [the service] to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end." *Id.* at 351–52, 107 S.Ct. at 2406. The Court also reaffirmed its deference to prison officials in matters of prison administration: "[w]e take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to 'substitute our judgment on ... difficult and sensitive matters of institutional administration,' for the determinations of those charged with the formidable task of running a prison." *Id.* at 353, 107 S.Ct. at 2407 (citation omitted).

Given the uncertainty of the infringement on free exercise in this case and the deference shown to prison officials in *O'Lone,* we conclude that plaintiff has not adequately set forth an allegation which states a deprivation of First Amendment rights. We therefore grant defendants' motion for summary judgment on this claim.

*Alleged Retaliation*

Though not clearly alleged in the amended complaint, plaintiff appears to be arguing that his punishment was due not to the violation of any prison rule, but because he had filed an inmate grievance against Officer Pisco and threatened to file a lawsuit against him. *See* Plaintiff's Mem. of Law at 14, 41. Plaintiff argues that this retalia-

tion violated his First and Fourteenth Amendment rights.

 A cause of action may arise under section 1983 for administrative decisions made in retaliation for the exercise of an inmate's constitutional rights. *See Gill v. Mooney,* 824 F.2d 192, 194–195 (2d Cir. 1987); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990). However, as we stated in *Baker,* in order to prevail on such a claim, plaintiff must show that the allegedly retaliatory action " 'would not have been taken *but for* the exercise of such rights,' and must include factual allegations with a 'high level of detail.' " *Baker,* 741 F.Supp. at 439 (citations omitted).

 Plaintiff alleges that he filed a grievance report against Officer Pisco on April 4, the day of the incident in question, and that its contents were shown to Pisco on that day; plaintiff contends that Pisco filed the disciplinary report the next day. *See* Amended Complaint ¶ 5. Though not explicitly alleged in the amended complaint, plaintiff appears to be implying that Pisco instituted the disciplinary action in retaliation for the grievance report.

Officer Pisco contends that he filed the misbehavior report, also signed by three other officers, on April 4, and that it was in response to plaintiff's behavior during the incident. According to Pisco, plaintiff became agitated during the episode, attempted to create a disturbance and threatened Pisco. *See* Pisco Aff. ¶¶ 7–9.

However, construing the sequence of events in the light most favorable to the plaintiff, we find that he has not alleged facts sufficient to withstand a summary judgment motion on the issue of retaliation. Plaintiff has not denied the conduct that Officer Pisco contends led to the filing of the Misbehavior Report, nor has he offered affidavits or other evidence sufficient for the Court to conclude that there are genuine issues for trial. Therefore, we grant defendants' motion for summary judgment on the retaliation issue.

## II. ACTION II

Plaintiff's claims in Action II focus upon his medical needs and allege inadequate

medical treatment in violation of the Eighth Amendment. In *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976), the Court recognized that failure to provide adequate medical treatment in a prison setting may constitute cruel and unusual punishment under the Eighth Amendment. As the Court recently reaffirmed in *Hudson v. McMillan,* the standard establishing an Eighth Amendment violation varies according to the type of conduct alleged. *See Hudson v. McMillan,* 112 S.Ct. at 998. The *Estelle* Court established that in the context of medical treatment, a plaintiff must show "deliberate indifference to serious medical needs" in order to allege a constitutional violation. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291.

██ In their motion to dismiss, defendants argue that the plaintiff has failed to allege serious medical needs. In his complaint, plaintiff makes a variety of claims, including his need for an adequate wheelchair, and for orthopedic treatment. He also alleges the failure to provide him with a liquid dietary supplement. Defendants do not dispute that plaintiff is a paraplegic. Taking plaintiff's allegations as true, as we are obliged to do in a motion to dismiss, we cannot say that these claims do not constitute serious medical needs for someone in plaintiff's situation. Therefore, we deny the defendants' motion to dismiss the complaint.

██ Plaintiff's first motion for a preliminary injunction seeks medical treatment and supplies at the Green Haven facility. Because plaintiff has now been transferred to another facility, we dismiss his claim for injunctive relief as moot. Plaintiff's second motion for a preliminary injunction alleges retaliatory transfer to a new institution without a paraplegic facility. He further alleges that he lacks such necessities as adequate access to a toilet, and that he is being denied items essential to his personal hygiene such as a catheter. Plaintiff seeks transfer back to Green Haven. We deny this motion, because his request for injunctive relief is not properly directed to the defendants named in this action. However, this denial is without prejudice for plaintiff to bring a new action, including one for injunctive relief, directed against the proper parties.

## CONCLUSION

For all of the foregoing reasons, we grant defendants' motion in Action I in its entirety. Defendants' motion in Action II to dismiss the complaint is denied. Plaintiff's motions for preliminary injunction in Action II are denied. However, plaintiff may bring a new action, including one for injunctive relief, directed against the proper defendants. The parties are to provide the Court in writing with a discovery schedule for Action II by May 1, 1992.

SO ORDERED.