Anthony Adolph BRYAN, Plaintiff,

v.

ADMINISTRATIVE OF F.C.I. OTIS-VILLE, W. Anselmo F.C.I. Otisville Physician Assistance, J. Gurliacci "Officer," the Officer That Received Me in the Segregation Unit on May 16th, 1994 and All the Officers That Was On Duty In The Segregation Unit From May 16 to May 20, 1994, Defendants.

No. 94 Civ. 6357 (WK).

United States District Court, S.D. New York.

Sept. 5, 1995.

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

This is a *pro se* inmate action in which the plaintiff, Anthony Adolph Bryan, alleges that

a corrections officer injured him by pushing him with excessive force. Plaintiff further alleges that, during and immediately after a three-day administrative detention, prison officials denied him proper medical treatment and access to his personal prayer materials. Defendants move to dismiss or, in the alternative, for summary judgment. For the reasons that follow, we dismiss the complaint in its entirety.

## BACKGROUND

Plaintiff is an inmate in the custody of the federal Bureau of Prisons ("BOP"). He is currently incarcerated at the Low Security Correctional Institution, Allenwood, Pennsylvania ("LSCI Allenwood") but, at the time of the events underlying this action, was imprisoned at the Federal Correctional Institution, Otisville, New York ("FCI Otisville").

Defendants are the BOP (misnamed in the complaint "Administrative of Otisville") and BOP officers employed at FCI Otisville during May 1994. Defendant John Gurliacci was a senior officer specialist, and defendant Wilfredo Anselmo a physician's assistant.[1]

The complaint alleges the following facts: At approximately 5:00 p.m. on May 16, 1994, plaintiff was involved in a dispute with Gurliacci in FCI Otisville's dining room concerning whether or not he had properly disposed of his dinner tray. Compl. at ¶1. When plaintiff refused to obey an order to dispose of another inmate's tray, Gurliacci collected plaintiff's identification card and demanded that he report to the Lieutenant's Office at 6:00 p.m. *Id.*

Upon so reporting to the Lieutenant's Office, plaintiff refused to follow Gurliacci's instruction to collect trash in the prison compound as a penalty for refusing an order. Compl. at ¶3. Plaintiff informed Gurliacci that he had committed no offense worthy of punishment. *Id.* Gurliacci became annoyed, "drew back and came forward with force" and pushed plaintiff. *Id.* Plaintiff "missed steps" and experienced pains in his right leg as a result. *Id.*

[1] The complaint also states claims against officers who received plaintiff or were on duty during his three-day administrative detention in FCI Otisville's Special Housing Unit. These officers have not been served with process.

Officers led plaintiff, who had difficulty walking as a result of Gurliacci's push, to the institution's Special Housing Unit (hereinafter "SHU") for administrative detention. *Id.* at ¶ 4. At the SHU, the officer who received plaintiff refused to allow him to take his personal prayer materials—a Quran (otherwise known as a Koran) and prayer beads—with him to the cell. *Id.* at ¶ 5. During his three days in the SHU, plaintiff never received the prayer materials despite daily assurances that evening shift officers would provide them. *Id.* at ¶¶ 5–7.

While in the SHU, plaintiff also failed to receive his prescribed sleeping pills (Vistaril) and other medications. *Id.* at ¶ 6. Officers who visited plaintiff or who were stationed in the SHU refused to heed plaintiff's repeated requests for the medications. *Id.* at ¶¶ 6–9, 12. As a result of being deprived of the medications, plaintiff developed a fever and mouth infection that caused swelling to one side of his face and scars on his lips. *Id.* at ¶ 19.

When Anselmo visited plaintiff in the SHU on May 17, 18 and 19, plaintiff complained of his physical ailments and of the fact that he was not receiving his medications. *Id.* at ¶¶ 7–11. During these and subsequent examinations, Anselmo stated that the Pharmacy Department was to blame for erroneously delivering the medications to plaintiff's former cell in the regular housing unit. *Id.* at ¶¶ 11, 15. Anselmo further assured plaintiff that he had instructed the Pharmacy Department to deliver the medications to the SHU. *Id.* at ¶ 8.

On May 19, plaintiff threatened to engage in a hunger strike and to institute legal proceedings if he did not receive his medications. *Id.* at ¶ 11. On that date, his unit manager visited him in the SHU to judge his case. The unit manager suspended plaintiff's commissary privileges for 30 days, visiting privileges for 60 days and demanded that plaintiff maintain a clean record for 180 days. *Id.* at ¶ 12.

On May 19, plaintiff was released from segregation. Although plaintiff received some of his confiscated property at that time, prison officials failed to return his prayer materials until May 20. *Id.* at ¶¶ 13–14.

Plaintiff has not alleged that he filed any administrative complaint with the BOP with respect to any of the events underlying this action.

According to the complaint, Anselmo once again examined plaintiff on May 24. Plaintiff once more complained of his ailments, and asserted that he had been suffering from food poisoning. *Id.* at ¶ 15. Anselmo "recommended maalox" and admitted that the BOP administration made a grave error in failing to inform the pharmacy department that plaintiff had been placed in a segregated cell. *Id.*

Plaintiff claims that the Vistaril prescribed to him while at FCI Otisville caused forgetfulness and disorientation. *Id.* at ¶ 16. Although plaintiff complained of these side effects to Anselmo and other medical personnel, they did nothing in response. *Id.*

Defendants' motion and supporting affidavits were filed on March 31, 1995, and plaintiff has in no way responded thereto. However, we have carefully examined defendant's presentations and concluded that they contain no facts which give support to any of plaintiff's claims. We shall, accordingly, ignore the papers submitted by defendants, and proceed on the assumption that only plaintiff's allegations are before us. For reasons that follow, it is our conclusion that the complaint must be dismissed.

## DISCUSSION

■ Allegations contained in a *pro se* complaint must be liberally construed. *See Haines v. Kerner* (1972) 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652. As so construed, plaintiff's allegations attempt to state Eighth Amendment claims for excessive use of force against him and for the denial of medical treatment in violation of the Eighth Amendment; a First Amendment claim for the three-day deprivation of his Kuran and prayer beads; Fourteenth Amendment Due Process claims for his confinement in the SHU and for the three-day seizure of his personal property; and various common law tort claims against Anselmo and Gurliacci. Accepting all of plaintiff's allegations as true,

we find that none of his claims withstand the instant motion.

To survive a motion to dismiss an "excessive force" claim, a plaintiff must allege that (1) the use of force was objectively harmful enough to represent a constitutional violation; and (2) the official or officials exerting such force acted with a sufficiently culpable state of mind. *Hudson v. McMillian* (1992) 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156. The Second Circuit has deemed brief confrontations between prisoners and guards such as the pushing incident alleged here insignificant for Eighth Amendment purposes. *See, e.g., DeArmas v. Jaycox* (S.D.N.Y. Feb. 8, 1993), No. 92 Civ. 6139, 1993 WL 37501, *aff'd* (2d Cir. Nov. 19, 1993) 14 F.3d 591 (excessive force claim dismissed where inmate alleged that guards punched, kicked and pushed him against wall); *Candelaria v. Coughlin* (S.D.N.Y.1992) 787 F.Supp. 368, 374–75, *aff'd* (2d Cir.1992) 979 F.2d 845 (claim dismissed where inmate alleged that guard pressed fist into his neck).

Under *Estelle v. Gamble* (1976) 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, to state a claim for improper medical treatment under the Eighth Amendment a plaintiff must assert "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Allegations of merely negligent treatment or of misdiagnosis fail to meet this standard. *Id.; see also Church v. Hegstrom* (2d Cir.1969) 416 F.2d 449, 451. Here plaintiff has asserted that he failed to receive medication for three days and that his complaints of insomnia, fever and infection during that time were ignored; that as a result of this deprivation plaintiff suffered fever and developed a mouth infection; and that he did not react well to Vistaril, a sleeping medication which prison doctors had prescribed. None of these allegations, in our view, meets the stringent "deliberate indifference" standard adopted in *Estelle*. Accordingly, we dismiss both of plaintiff's Eighth Amendment claims.

Plaintiff's First Amendment claim is similarly deficient. The Supreme Court has held that the Constitution does not prohibit reasonable prison regulations which arguably interfere with an inmate's religious practices. *See O'Lone v. Estate of Shabazz* (1987) 482 U.S. 342, 349, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282; *Cruz v. Beto* (1972) 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (*per curiam*). Here plaintiff asserts that he was deprived of his Quran and prayer beads for a period of three days. Given the legitimate security concerns which arise in the prison context, such a brief confiscation of religious items seems to us wholly reasonable.

Plaintiff's complaint can be construed as stating Fourteenth Amendment Due Process claims based on (1) the seizure of his property between May 17th and May 19th and (2) his confinement in the SHU. Like plaintiff's First Amendment claim, his seizure claim has no merit in light of defendants' reasonable security concerns. With regard to his confinement claim, the Second Circuit has held that administrative detention does not violate Due Process unless there exist established procedures for detaining an inmate which were not followed in a particular case. *See Lowrance v. Achtyl* (2d Cir.1994) 20 F.3d 529, 535. Plaintiff has not alleged that defendants deviated from any such procedures. We thus grant defendants' motion with regard to plaintiff's Fourteenth Amendment claims.

The remaining claims which the complaint attempts to assert are tort claims against Anselmo and Gurliacci. Under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671, *et seq.*, § 2679(b)(1) (West 1981 & 1995 Supp.) (hereinafter "the FTCA"), the exclusive remedy for claims based on "injury . . . resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . ." is an action against the United States pursuant to the FCTA. *See also Rivera v. United States* (2d Cir.1991) 928 F.2d 592, 608–609.[2] As plain-

---

**2.** For the purposes of the FTCA, conduct falls within the scope of "employment" where "there is a reasonable connection between the act and the agent's duties and responsibilities." *See Yalkut v. Gemignani* (2d Cir.1989) 873 F.2d 31, 34.

tiff's allegations against Anselmo and Gurliacci undoubtedly relate to their duties as prison officials, we must construe them as claims against the United States under the FCTA. Construed as such, they must be dismissed. Absent the filing of an administrative complaint, a federal court lacks subject matter jurisdiction over a tort action against the United States. *See Wyler v. United States* (2d Cir.1983) 725 F.2d 156, 159. In the case at bar plaintiff has not alleged that he filed any administrative complaint. Accordingly, we dismiss the tort claims against Anselmo and Gurliacci.

### CONCLUSION

For the reasons stated herein, we dismiss the complaint in its entirety.

**SO ORDERED.**