Michael AZIZ ZARIF SHABAZZ a/k/a Michael Hurley, Plaintiff,

v.

Jose PICO, Hearing Supervisor; Bobbie Jo LaBoy, Sergeant; Daniel Mack, Charles McCormick, Patrick Brady, E. Doyle, O'Gorman, Suber, Prison Guards; Donald Selsky, Director of the Box/Punitive Segregation, et al., individually and in their official capacities, Defendants.

No. 93 CIV. 1424(SS).

United States District Court, S.D. New York.

Feb. 11, 1998.

461

Michael Aziz Zarif Shabazz, a/k/a Michael Hurley Shawangunk Correctional Facility, Wallkill, NY, pro se.

Dennis C. Vacco, Attorney General, State of New York; Marisa Reiue, of counsel.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiff Michael Aziz Zarif Shabazz, a/k/a Michael Hurley, an inmate presently con-

fined at Shawangunk Correctional Facility, brings this Section 1983 action *pro se* alleging that defendants violated his constitutional rights while he was confined at Green Haven Correctional Facility in 1990 and 1992. Discovery having been concluded, defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(b).[1] For the reasons to be discussed below, the Court grants defendants' motion.

## BACKGROUND

### I. The January 12, 1990 incidents.

Plaintiff was transferred from Shawangunk Correctional Facility arriving at Green Haven Correctional Facility on January 12, 1990. Defendant's 56.1 Statement, at 2,

¶¶ 3–4. Plaintiff claims that when he arrived at Green Haven, Officers Suber and O'Gorman "grabbed, beat, punched, kicked and dragged him from the ground outside of the transfer van, while he was handcuffed behind his back and shackled to his feet with leg irons on, to and into. Greenhaven Prison and threw him on top of and over a long table as defendant Laboy observed, condoned and supervised without ordering such criminal and unlawful [sic] to immediately stop, cease and desist." Complaint, at 5, ¶ 14. Plaintiff claims that defendants Suber, O'Gorman and Laboy conspired to assault him in retaliation for his "litigation endeavor"[2] and because he would not voluntarily submit to a strip frisk.[3] *Id.;* Plaintiff's Op-

---

1. The Local Rules of this Court require that a motion for summary judgment include "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a) (formerly Local Rule 3(g)). Any opposing papers to the motion shall include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b) (same).

Defendants submit two documents with their motion and supporting memoranda: Defendants' Statement Pursuant to Civil Rule 3(g) of the Material Facts which are not in Dispute (filed May 2, 1996) (hereinafter "Defendants' 3(g) Statement") and Defendants' Statement Pursuant to Local Civil Rule 56.1 (filed July 15, 1997) (hereinafter "Defendants' 56.1 Statement"). In response to defendants' moving papers, plaintiff submits three documents: Declaration in Opposition to Summary Judgment Motion (filed Aug. 11, 1997) (hereinafter "Plaintiff's Opposition # 1"), Supplemental and Supporting Declaration in Opposition to Summary Judgment (filed Aug. 11, 1997) (hereinafter "Plaintiff's Opposition # 2"), and Second Supplemental Declaration in Opposition to a Summary Judgment (filed Oct. 14, 1997) (hereinafter "Plaintiff's Opposition # 3"). Plaintiff does not submit a separate statement contending "there exists a genuine issue to be tried", as required by Local Rule 56.1(b), but instead states that he does "not have access to Local Civil Rule 56.1 to completely assess the defendants' criteria and my responsibility to respond to the defendants' contentions and propositions." Plaintiff's Opposition # 1, at 1. Despite plaintiff's failure to comply with the Local Rules of this Court, as well as my specific instruction on this matter, I have given plaintiff's submissions the liberal reading required when a party is proceeding *pro se. See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) *(per curiam ); Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) *(pro se* papers should be inter-

preted "to raise the strongest arguments that they suggest"); *see also* Transcript, at 2 (S.D.N.Y. Aug. 15, 1997); Transcript, at 3 (S.D.N.Y. June 10, 1994).

2. Plaintiff is no stranger to the courts. *See In re Michael , Aziz Zarif Shabazz,* M–120 (TPG) (S.D.N.Y. Apr. 30, 1997); *Shabazz v. Vacco,* No. 97 Civ. 3761(DC) (S.D.N.Y. pending); *Shabazz v. Pataki,* No. 95 Civ. 8558(TPG) (S.D.N.Y. Mar. 28, 1996), *appeal dismissed,* No. 96–2406 (2d Cir. Mar. 19, 1997); . *Shabazz v. Coombe,* No. 95 Civ. 4144(TPG) (S.D.N.Y. Sept. 18, 1995), *appeal dismissed,* No. 95–2712 (2d Cir. Oct. 13, 1995); *Shabazz v. Cuomo,* No. 93 Civ. 7692(DLC) (S.D.N.Y. pending); *Shabazz v. Coughlin,* No. 93 Civ. 8148(LAP), 1996 WL 164674 (S.D.N.Y. Apr. 10, 1996); *Shabazz v. Mann,* No. 91 Civ. 7691(CLB) (S.D.N.Y. Nov. 14, 1991); *Shabazz v. Scully,* No. 91 Civ. 6319 (JFK/DLC) (S.D.N.Y. Mar. 24, 1995), *aff'd,* 100 F.3d 941, 1996 WL 11829 (2d Cir. 1996); *Shabazz v. Scully,* No. 91 Civ. 3807(MJL) (S.D.N.Y. July 3, 1991); *Shabazz v. Lungen,* No. 88 Civ. 9137(LLS) (S.D.N.Y. Mar. 29, 1993) (stat. closing); *Shabazz v. McGinnis,* No. 87 Civ. 5469(CLB) (S.D.N.Y. July 23, 1987); *Shabazz v. Coughlin,* No. 86 Civ. 6418(RLC) (S.D.N.Y. Sept. 4, 1986); *Hurley v. Hongisto,* No. 79 Civ. 4773(WK) (S.D.N.Y. Mar. 11, 1983); *Hurley v. Keenan,* No. 79 Civ. 4772(RJW), 1984 WL 358 (S.D.N.Y. May 8, 1984); *Hurley v. Ward,* No. 77 Civ. 3847(RLC) (S.D.N.Y. July 21, 1983); *Shabazz v. State,* 191 A.D.2d 832, 594 N.Y.S.2d 464 (1993). Of these, at least three actions involve plaintiff's challenges to search procedures by prison officials: *Shabazz v. Scully,* No. 91 Civ. 6319 (JFK/DLC) (S.D.N.Y. Mar. 24, 1995), *aff'd,* 100 F.3d 941, 1996 WL 11829 (2d Cir. 1996); *Shabazz v. Lungen,* No. 88 Civ. 9137(LLS) (S.D.N.Y. Mar. 29, 1993); *Hurley v. Ward,* No. 77 Civ. 3847(RLC) (S.D.N.Y. July 21, 1983).

3. Although the parties agree that plaintiff was injured, they disagree as to the cause of plain-

position # 1, at 5, ¶ 2. Plaintiff was then examined and received medical attention for an " 'abrasion to the right shoulder' " and " 'minor laceration to left second digit' ". Defendants' 56.1 Statement, at 2, ¶ 8; *see id.* at Exh. D. Without explanation, plaintiff claims that "a lot of [his] injuries were not recorded by the medical staff".[4] Plaintiff's Opposition # 1, at 9, ¶ 14.

Following his admission to Green Haven, plaintiff received a misbehavior report. Defendants' 3(g) Statement, at Exh. C. Plaintiff claims that he was denied witnesses and exculpatory evidence at the January 25, 1990 disciplinary hearing before Lieutenant De-Gaust. Complaint, at 7, ¶ 18. Plaintiff was found guilty of two counts of refusing a direct order, and one count of refusing to submit to a strip frisk. Defendants' 3(g) Statement, at Exh. C. He received a sentence of 90 days in the Special Housing Unit as well as 90 days loss of packages, commissary, and telephone privileges. *Id.* Plaintiff claims that defendant Selsky joined the conspiracy to violate plaintiff's rights when he upheld Lieutenant DeGaust's determination. Complaint, at 7, ¶ 18.

## II. *The October 1, 1992 incidents.*

Plaintiff claims that defendants McCormick, Doyle and Mack conspired to harass, retaliate and provoke plaintiff into a physical confrontation when they discovered plaintiff would be transferred from Green Haven on October 1, 1992. Complaint, at 8, ¶ 20. They allegedly made a number of racial slurs towards plaintiff and threatened to beat and kill him if he did not "voluntarily submit to and comply with the strip search procedures." *Id.* at 8–9, ¶ 21. When plaintiff exited his cell, he was intercepted by defen-

dants Brady and McCormick who then pat frisked him in the search room. Plaintiff claims this pat frisk procedure violated the consent decree in *Hurley v. Ward,* No. 77 Civ. 3847(RLC) (S.D.N.Y. July 21, 1983).[5] Complaint, at 9, ¶ 23; *see* Defendants' 56.1 Statement, at Exh. K. Plaintiff was then ordered to submit to a strip frisk which he refused to do. *See* Defendants' 56.1 Statement, at 3–4, ¶¶ 14–15.

As a result of these incidents, plaintiff received a misbehavior report. Defendants' Response to Plaintiff's Request for Documents, at Exh. B. Plaintiff claims that his due process rights were violated at the October 13, 1992 disciplinary hearing arising from these events in that he was denied: the ability to present a defense and rebut the charges, an inmate assistant, witnesses, an impartial and unbiased hearing officer, and the opportunity to review the video tape of the search "to establish retaliatory factors and to present mitigating evidence pursuant to the consent decree in *Salik v. Farrel."* Complaint, at 17, ¶ 35(1–5). Following a disciplinary hearing, plaintiff was found guilty of refusing a direct order, but not guilty of refusing to submit to a strip frisk.[6] Complaint, at 16, ¶ 35; Defendant's Response to Plaintiff's Request for Documents, at Exh. B. He received a sentence of 90 days in the Special Housing Unit as well as 90 days loss of packages, commissary, and telephone privileges. Defendants' 56.1 Statement, at Exh. P.

Plaintiff was transferred from Green Haven Correctional Facility to Sing Sing Correctional Facility on October 1, 1992. Defendants' 3(g) Statement, at 4, ¶ 19. Plaintiff alleges that he inadvertently left his eye-

---

tiff's injuries. Defendants claim that upon arriving in Ossining, plaintiff refused to leave the bus and was injured because he had to be physically removed from the bus. Defendants' 56.1 Statement, at 2, ¶¶ 4–6; *id.* at Exh. B.

**4.** Plaintiff also claims that as a result of this incident, he requested emergency medical attention on January 13, 1990. Plaintiff's Opposition # 1, at 10, ¶ 16; *see also* Defendants' 56.1 Statement, at Exh. D.

**5.** Plaintiff claims that the consent decree in the *Hurley* case "does not say and permit room for a

prison guard to pat frisk a prisoner and then strip search and strip-frisk him which is exactly what happened to [plaintiff] upon his transfer." Complaint, at 10–11, ¶ 24.

**6.** The misbehavior report, written by C.O. J. Gladding, indicates that plaintiff refused to remove his underwear to complete the search. C.O. Gladding then "physically spread inmate's buttocks. [He] also had to lift inmate's penis to complete the frisk. Frisk was completed with no further incidents." Defendant's Response to Plaintiff's Request for Documents, at Exh. B.

glasses at Green Haven. Complaint, at 11, ¶ 26. Upon inquiring into the matter, plaintiff was told that his glasses could not be located. *Id.* at 12, ¶ 27. Plaintiff alleges that defendants McCormick and Brady conspired to destroy his glasses. *Id.*

\* \* \* \* \* \*

Plaintiff filed the instant action under 42 U.S.C. § 1983 with seven causes of actions alleging that defendants violated his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments. Defendants move for summary judgment claiming that (1) the facts do not support a claim for excessive force; (2) the disciplinary hearings complied with due process; (3) the facts do not support claims for conspiracy and retaliation; (4) verbal epithets without physical injury are not actionable under § 1983 as a matter of law; and (5) defendants are entitled to qualified immunity.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). The moving party bears the initial responsibility of "informing the court of the basis for its motion" and identifying those portions of the record that it "believes demonstrate the absence of a genuine issue of material fact." *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the particular litigation if the

substantive law at issue so renders them. *Anderson,* 477 U.S. at 248.

The burden of establishing that no genuine factual dispute exists rests on the party seeking summary judgment. *Chambers,* 43 F.3d at 36. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," however, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *accord Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir. 1994) ("[t]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). If the moving party meets its burden, the burden then shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To defeat the summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovant must " 'come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture of surmise.' " *Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).

It is within this context that the district court must then view the evidence in "a light most favorable to the nonmoving party," and resolve all ambiguities and "draw all reasonable inferences" in its favor. *American Casualty Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see Anderson,* 477 U.S. at 255; *Chambers,* 43 F.3d at 36. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a *reasonable* inference could be drawn in favor of the moving party, summary judgment is improper." *Chambers,* 43 F.3d at 37 (emphasis added). Only when it is apparent that no

rational trier of fact "could find in favor of the nonmoving party because the evidence to support its case is so slight" should summary judgment be granted. *See Gallo,* 22 F.3d at 1223–24.

Moreover, in actions in which one of the parties appears *pro se,* this Court is faced with the additional responsibility of granting significant liberality in how *pro se* pleadings are construed. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) *(per curiam )* (*pro se* pleadings held "to less stringent standards than formal pleadings drafted by lawyers."); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989); *accord Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) ("[W]e read [the *pro se* party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment. *See Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) ("a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Id.* (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)), *reh'g granted on other grounds,* 914 F.Supp. 1004 (S.D.N.Y.1996); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080(PKL), 1994 WL 681763, at *5 (S.D.N.Y. Dec.5, 1994) ("The work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*'s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual."); *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended.").)

II. *Conspiracy and Retaliation*

As to plaintiff's allegations of conspiracy to deprive him of his constitutional rights, the Court grants all of the defendants' motion for summary judgment. Plaintiff has failed to allege facts sufficient to show the existence of any conspiracy designed to deprive him of his rights. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) *(per curiam ).* Plaintiff has not included any allegations or competent evidence to show that "defendants 'acted in a willful manner, culminating in an agreement, understanding or "meeting of the minds," that violated [his] rights, privileges, or immunities secured by the Constitution or federal courts.'" *Hameed v. Pundt,* 964 F.Supp. 836, 839 (S.D.N.Y.1997) (quoting *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y. 1992) (quoting *Katz v. Morgenthau,* 709 F.Supp. 1219, 1231 (S.D.N.Y.), *aff'd in part, rev'd in part,* 892 F.2d 20 (2d Cir.1989))). Plaintiff asserts that defendants conspired against him, but offers no facts to support his contentions. Claims of conspiracy that are vague and provide no basis in fact must be dismissed. *See Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993); *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (citations omitted), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *see also Boddie,* 105 F.3d at 862 (an "unsupported, speculative, and conclusory" claim of conspiracy may be dismissed on the pleadings).

Likewise, plaintiff's conclusory claim that correctional officials have retaliated against him for filing numerous grievances and lawsuits during his incarceration cannot survive summary judgment. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987). Although prison officials may not retaliate against prisoners for exercising their constitutional rights, *see Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)), claims of retaliation must be examined with skepticism and care because they are " 'prone to abuse' because prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Because retaliation claims "can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial." *Justice v. Coughlin,* 941 F.Supp. 1312, 1316 (N.D.N.Y. 1996); *see Gill v. Pact Organization,* No. 95

Civ. 4510(LAP), 1997 WL 539948, at *12 (S.D.N.Y. Aug.28, 1997); *see also Colon,* 58 F.3d at 872 ("because we recognize ... the ease with which claims of retaliation may be fabricated, we examine prisoners claims of retaliation with skepticism and particular care."); *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (given the possibilities for such abuse, the Second Circuit requires a "higher level of detail in pleading [retaliation claims]").

In order to assert a claim of retaliation successfully, "a plaintiff must allege that he or she engaged in conduct that was constitutionally protected and that retaliation against the protected conduct was a 'substantial' or 'motivating' factor in the defendants's actions." *Blue v. Koren,* 72 F.3d 1075, 1082 (2d Cir.1995) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *see Graham,* 89 F.3d at 79 (same). Plaintiff vaguely asserts that defendants retaliated against him "because of [his] litigation endeavors and because [he] did not voluntarily submit to a strip frisk". Plaintiff's Opposition # 1, at 5, ¶ 8; *see* Complaint, at 6, ¶ 16; Complaint, at 7, ¶ 17, Complaint, at 8, ¶ 20; Complaint, at 11, ¶ 25; Complaint, at 12, ¶ 28. Except for this general assertion, plaintiff offers no support for his retaliation claim. Plaintiff is required to proffer facts to defeat defendants' motion for summary judgment, not merely rely upon conclusory statements. Plaintiff must also show by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that there are factual issues which can only be resolved at trial. Fed. R.Civ.P. 56(c); *Colon,* 58 F.3d at 872; *Hendricks v. Centanni,* No. 92 Civ. 5353(SAS), 1996 WL 67721, at *4 (S.D.N.Y. Feb.16, 1996). Broad and unsubstantiated allegations of retaliation such as those in the instant action will not defeat a motion for summary judgment. *See Flaherty,* 713 F.2d at 13 (a complaint "which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). Plaintiff presents no facts to support his claims of conspiracy and retaliation.

## III. *Excessive Force*

Plaintiff claims that defendants Suber and O'Gorman violently assaulted him on January 12, 1990, and that defendant LaBoy observed and condoned the assault. Complaint, at 5, ¶ 14. The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993) (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In response to an excessive force claim by an inmate under the Eighth Amendment, I must decide whether material facts in dispute exist to show "whether force was applied in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

An inmate claiming to be the victim of excessive force by correctional officials bears the burden of establishing both the objective and the subjective component of the Eighth Amendment claim. *Wilson,* 501 U.S. at 298–300; *Romano,* 998 F.2d at 105. In other words, a plaintiff must prove that the punishment inflicted upon him was inflicted "maliciously and sadistically for the purpose of causing harm" and that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Hudson,* 503 U.S. at 7, 8 (quoting *Wilson,* 501 U.S. at 298, 303). However, not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9 (citing *Johnson,* 481 F.2d at 1033 ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")).

While a *de minimus* use of force will rarely suffice to sustain a constitutional claim, plaintiff is not required to show that the application of force resulted in serious injury. *Hudson,* 503 U.S. at 9. The extent of the plaintiff's injury is just one factor to be

considered in determining whether force used by correctional officials was excessive. "Thus, the seriousness of the injury is 'relevant to the Eighth Amendment inquiry, but does not end it.'" *Johnson v. Coughlin*, No. 94–CV–257H, 1997 WL 250060, at *2 (W.D.N.Y. Apr.2, 1997) (quoting *Hudson*, 503 U.S. at 9; other citations omitted). The other factors which a court must consider are: "the need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response." *Brown v. Busch*, 954 F.Supp. 588, 594 (W.D.N.Y.1997) (citing *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■ To support their motion for summary judgment, defendants assert that plaintiff's medical records fail to establish physical injury of a constitutional dimension. Defendants submit copies of plaintiff's ambulatory health record which document that following the January 12, 1990 incident, plaintiff's right shoulder was treated for an abrasion and his second finger of his left hand was treated for a minor laceration. Defendants' 56.1 Statement, at Exh. D. In addition, the medical provider recorded that at the time of the examination, "[a]t first [plaintiff] denied any injury" and then stated "'it was the cuffs' then he stated something to the effect 'they did this'". Defendants' 3(g) Statement, at Exh. B.

The plaintiff has changed his allegations regarding his injuries a number of times during the course of this litigation. In his Complaint, plaintiff alleged he "suffered serious physical injury and protracted physical injury and pain" because of defendants' actions on January 12, 1990. Complaint, at 6, ¶ 15. At his deposition, however, when asked if he "suffer[s] from any physical or medical problems from the incident" of January 12, 1990, plaintiff responded that he suffers only from "emotional and psychological scars." Plaintiff's Deposition (Sept. 29, 1996), at 174 (reproduced at Defendants' 56.1 Statement, at Exhs. H & M). Plaintiff also testified at his deposition that there were "cuts over my

body" and there was bleeding in "other areas of my body", but when questioned about specifics concerning cuts and bleeding, he could not identify where on his body the cuts and bleeding had occurred. *Id.* at 104, 105 (reproduced at Defendants' 56.1 Statement, at Exh. E). He then stated that his wrists swelled and "there was bruises". *Id.* at 104. Plaintiff admitted that he had no "permanent physical injuries". *Id.* at 173 (reproduced at Defendants' 56.1 Statement, at Exh. H). The Court received an unsworn letter from plaintiff which indicates that he experienced no bleeding nor bruising as a result of the January 12, 1990 incident. *See* Letter (dated May 7, 1996), at 4, ¶ 7 (reproduced at Defendants' 56.1 Statement, at Exh. G) ("Every injury that the human body sustains is not always apparent to the naked eye, nor does streaming and spurting blood always occur when someone is kicked, beaten, and punched in the stomach, buttocks, back, feet, etc.. So the human body can be sore and suffer a prolonged injury of pain, without the naked eye detecting blood and apparent bruises.").

Plaintiff relies on the accuracy of his medical records but only insofar as they "attributed my injuries to the defendants." Plaintiff's Opposition # 1, at 10, ¶ 16. Simultaneously, however, plaintiff questions the accuracy of the medical reports and contends that "clearly, a lot of my injuries were not recorded by the medical staff." *Id.* at 9, ¶ 14; *see Shabazz v. Scully*, No. 91 Civ. 6319(JFK), 1994 WL 198683, at *4 (S.D.N.Y. May 19, 1994) (plaintiff alleged that video was "doctored"); *see also* Fed.R.Civ.P. 56(e) (to defeat summary judgment, nonmoving party cannot rest on "mere allegations or denials" of the facts asserted by the movant); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994); *Christian Dior–New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 38 (2d Cir.1986) (nonmovant must provide some basis to believe that his "version of relevant events is not fanciful.").

In opposing defendants' summary judgment motion, plaintiff's characterization of his injuries changed again. He describes his injuries, for the first time, as "a busted

lip, head, swelling to my face, eye, and numbness, pain and swelling to other extremities of my body inter alia, with some of my injuries, numbness and pain lasting for at least a period of six months." Plaintiff's Opposition # 1, at 8, ¶ 13. Despite the seriousness of these alleged injuries, plaintiff refused additional medical treatment on January 12, 1990. Defendants' 56.1 Statement, at Exh. D. Plaintiff then claims that his injuries were so great that he sought "emergency medical attention and treatment" the next day. Plaintiff's Opposition # 1, at 10, ¶ 17. Contrary to plaintiff's position, however, the medical examination on January 13, 1990, shows that no abrasions were seen on plaintiff's hands, no abrasions, cuts, or swelling noticed, no bump noticed on plaintiff's forehead, no pain indicated by plaintiff, and the cut on the second finger of plaintiff's left hand had healed. Defendants' 56.1 Statement, at Exh. D. Plaintiff offers no reasonable basis for disbelieving his medical records, but only asserts that his medical records are inaccurate. Plaintiff's Opposition # 1, at 9 ¶ 14; see also Candelaria v. Coughlin, 787 F.Supp. 368, 374 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir.1992).

Plaintiff's allegations regarding his injuries are not the only allegations that have changed considerably over the course of this litigation. Plaintiff's version of the events that transpired on January 12, 1990, has also undergone at least one significant revision. In his complaint, plaintiff alleges defendant officers "grabbed, beat, punched, kicked and dragged him from the ground outside of the transfer van, while he was handcuffed behind his back and shackled to his feet with leg irons on, to and into Greenhaven Prison and threw him on top of and over a long table as defendant Laboy observed, condoned and supervised without ordering such criminal and unlawful to immediately stop, cease and desist." Complaint, at 5, ¶ 14. But in his opposition to defendants' motion, plaintiff states that the beating occurred only *inside* the van, without any reference to defendants' actions originally alleged outside the van or inside the facility. Plaintiff's Opposition # 3, at 7, ¶ 12.

From the complaint, to plaintiff's deposition, to his opposition papers to defendants' summary judgment motion, plaintiff's allegations of the events at issue are replete with inconsistent and contradictory statements. Plaintiff, however, may not "create a material issue of fact by submitting ... affidavit[s] disputing his own prior sworn testimony" in order to defeat defendants' summary judgment motion. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) (citing *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987); other citations omitted); *see Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997); *Hayes v. New York Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)). To rule otherwise would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co.*, 410 F.2d at 578. Plaintiff offers no explanation as to why his version of the January 12, 1990 incident changed significantly from 1993 when he filed his Complaint to 1997 when he submitted his opposition papers. *See American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir.1997) (plaintiff failed to "suggest legitimate reasons for [the] filing of the inconsistent affidavit." *Id.* (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983))); *Brown v. C. Volante Corp.*, No. 95 Civ. 1406(NG), 1997 WL 441799, at *4 (E.D.N.Y. July 30, 1997). Thus, under the case law of this Circuit, plaintiff's opposition papers may be properly disregarded based on his inconsistent and contradictory statements. *See Mack*, 814 F.2d at 124.

Furthermore, in the context of summary judgment, it is my duty to assess the facts presented in a light most favorable to the non-moving party, but not to weigh the credibility of the parties. However, when the facts alleged are so contradictory that doubt is cast upon their plausibility, I am authorized to "pierce the veil of the complaint's factual allegations," dispose of "[s]ome improbable allegations", and dismiss the claim. *Denton v. Hernandez*, 504 U.S. 25, 32, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340

(1992); *see Dawes v. Coughlin,* 964 F.Supp. 652, 657 (N.D.N.Y.1997) ("plaintiff's version of events is beyond belief"); *Schmidt v. Tremmel,* No. 93 Civ. 8588(JSM), 1995 WL 6250, at *3 (S.D.N.Y. Jan.6, 1995) (citations omitted) ("No reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint or in [the] subsequent missives to the court."); *Rodriguez v. Murphy,* No. 91 CV–0650E(F), 1994 WL 735859, at *4 (W.D.N.Y. Jan. 3, 1995) ("great weight is placed on the proposition that [the court] might properly dispose of improbable allegations on a summary judgment motion"). Therefore, piercing the veil of the complaint's factual allegations, coupled with plaintiff's contradictory statements, plaintiff's Eighth Amendment claim cannot survive defendants' summary judgment motion.

▉ Plaintiff also refers to an incident on October 1, 1992, when defendants McCormick, Brady, Mack, Boyle subjected plaintiff to

> abuse, malicious and sadistic treatment, mental and emotional distress and other racist sadistic behavior to provoke, intimidate, harass, and antagonize him into a physical confrontation with them and to attack, beat, humiliate and degrade him under some perverted, arcane and purported lawful direct order predicated and principally upon the abuse of their authority and condoned by the sergeants or the supervisors present.

Complaint, at 13–14, ¶ 30. Plaintiff offers no details regarding this alleged "attack". Plaintiff admits that this incident consisted solely of defendant McCormick "kicking me inside of my ankles and feet" during a pat frisk. Plaintiff's Opposition # 1, at 17, ¶ 24. Plaintiff fails to attribute any constitutional significance or injury to the incident. Plaintiff's Deposition (Sept. 29, 1996), at 174 (reproduced at Defendants' 56.1 Statement, at Exh. M) ("I suffer from emotional and psychological scars."). Plaintiff's medical records for October 1, 1992—October 3, 1992 make no mention of an injury or ailment attributable to the pat frisk. *See* Defendants' 56.1 Statement, at Exh. M. In essence, although kicking an inmate's ankles and feet cannot be condoned, this use of force is *de minimus* and insufficient to rise to the level of a constitutional violation. *See Johnson,* 481 F.2d at 1033; *Candelaria,* 787 F.Supp. at 374–75 (*de minimus* use of force when officer "pushed his fist against [plaintiff's] neck so that [he] couldn't move and [he] was losing [his] breath") *see also Tierney v. Davidson,* No. 97–7172, 1998 WL 2799, at *10 (2d Cir. Jan.7, 1998) (in the context of a false arrest, "[t]he Officers' use of force as to [plaintiffs] was de minimus, necessary, appropriate, and benign.").

## IV. *Disciplinary Hearings*

Plaintiff further claims that his Fourteenth Amendment right to due process was violated during the January 25, 1990, and October 13, 1992 disciplinary hearings. In essence, he claims that he was denied witnesses, access to exculpatory evidence, an inmate assistant, and an impartial and unbiased hearing officer. Plaintiff also asserts that he was not "afforded 24 hours to prepare his defense prior to the commencement of the superintendent hearing". Plaintiff's Opposition # 1, at 16, ¶ 21.

▉ In *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court held that a "claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures" is not cognizable under 42 U.S.C. § 1983 "where the allegations of due process violations, if true, would 'necessarily imply the invalidity of the punishment imposed' unless the prisoner establishes that the determination at issue has previously been invalidated." *Wright v. Miller,* 973 F.Supp. 390, 393 (S.D.N.Y.1997) (quoting *Edwards,* 520 U.S. at ——, ——, 117 S.Ct. at 1585, 1589); *see also Heck v. Humphrey,* 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Black v. Coughlin,* 76 F.3d 72 (2d Cir.1996). "[T]he Supreme Court is sending a loud message: an inmate cannot seek money damages for alleged deprivations arising out of a prison disciplinary hearing by commencing an action under § 1983 unless the results of that hearing already have been invalidated." *Burnell v. Coughlin,* 975 F.Supp. 473, 477 (W.D.N.Y.1997); *see Brodie*

*v. Kuhlman,* No. 96 Civ. 0328(HB), 1997 WL 411932, at *1 (S.D.N.Y. July 23, 1997). As in *Edwards,* the plaintiff here is challenging the impartiality and bias of the hearing officers. Because plaintiff's allegations necessarily imply the invalidity of the dispositions of these two disciplinary hearings, plaintiff's claims under § 1983 are precluded by *Edwards. See Scott v. Scully,* No. 93 Civ. 8777(HB), 1997 WL 539951, at *1 (S.D.N.Y. Aug.28, 1997); *Sims v. Artuz,* No. 96 Civ. 0216(LAP), 1997 WL 527882, at *3 (S.D.N.Y. Aug.25, 1997); *Burnell,* 975 F.Supp. at 478; *Wright,* 973 F.Supp. at 393.

## V. *Pat frisk*

█ Plaintiff claims that on October 1, 1992, while en route to the search room to be strip searched, defendants Brady and McCormick ordered him "to stop and stand against the wall and submit to a pat frisk". Complaint, at 9, ¶ 22. A "pat frisk" is a "search by hand of an inmate's person and his or her clothes while the inmate is clothed, except that the inmate shall be required to remove coat, hat, and shoes. The inmate will be required to run fingers through hair and spread fingers for visual inspection. The search shall include searching into the inmate's clothing" N.Y.S. Department of Correctional Services Directive # 4910, at 2 (reproduced at Defendants' Response to Plaintiff's Request for Documents, at Exh. A.). Plaintiff alleges that defendants violated the consent decree in *Hurley v. Ward,* No. 77 Civ. 3847(RLC) (S.D.N.Y. July 21, 1983), by pat frisking him on October 1, 1992. Defendants do not specifically address this claim in their moving papers, but deny these allegations in their answers and "refer the Court to *Hurley v. Ward,* 448 F.Supp. 1227 (S.D.N.Y.1978), *aff'd in part and rev'd in part,* 584 F.2d 609 (2d Cir.1978), *on re-*

*mand,* 549 F.Supp. 174 (S.D.N.Y.1982), and 7 N.Y.C.R.R. §§ 305.1 et al. for the true language and meaning thereof." Defendants' Answer, at 4, ¶ 17 (filed July 12, 1993); Defendants' Answer, at 4, ¶ 17 (filed Dec. 8, 1993).

█ The *Hurley* consent decree, by its own terms, applies only to strip searches and strip frisks. *See* Consent Decree, at 1, ¶ 2 (reproduced at Defendants' 56.1 Statement, at Exh. K); *see also Shabazz v. Scully,* No. 91 Civ. 6319(JFK), 1994 WL 198683, at *3 (S.D.N.Y. May 19, 1994) ("The *Hurley* consent decree involved strip searches, not pat frisks."), *aff'd,* 100 F.3d 941, 1996 WL 11829 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). Furthermore, plaintiff's claim that defendants violated state regulations when conducting the pat frisk also fails because plaintiff does not allege a violation of a right protected by the United States Constitution or federal statute.[7] "An individual's right to have the relevant state laws strictly obeyed is not a federal right protected by the Civil Rights Act of 1871 or the Constitution of the United States." *Smith v. O'Connor,* 901 F.Supp. 644, 647–48 (S.D.N.Y.1995) (citations omitted); *see also Ramirez v. Holmes,* 921 F.Supp. 204, 208 (S.D.N.Y.1996).

I find that plaintiff's claim regarding the pat frisk conducted by defendants on October 1, 1992, implicates no constitutional right and therefore is dismissed. *See Shabazz,* 1994 WL 198683, at *3.

## VI. *Strip Frisk*

A strip frisk is "a search of an inmate's clothing and body including a visual inspection of body cavities." For a male, a strip frisk involves one or more of the following procedures: "a mouth search, running his

---

7. In any event, it is unclear which state regulation plaintiff asserts that defendants violated. The state closely regulates its search procedures of inmates.... "An inmate will be pat frisked whenever he goes out of or returns to the SHU; and/or prior to and upon returning from any exercise periods, hearings, interviews, etc." N.Y.S. Department of Correctional Services Directive # 4933, at 10 (reproduced at Defendant's Response to Plaintiff's Request for Documents, at Exh. A.). Pat frisks may be conducted on an inmate "going to and returning from housing areas and/or outside work details" and "enroute to and from program and recreation areas". N.Y.S. Department of Correctional Services Directive # 4910, at 2 (reproduced at Defendant's Response to Plaintiff's Request for Documents, at Exh. A.). Plaintiff admits that he was leaving his housing area when he was pat frisked. Complaint, at 9, ¶ 22. Thus, it is unclear what state regulation plaintiff believes defendants violated.

hands through his hair, allowing his ears to be visually examined, lifting his arms to expose his armpits, spreading his testicles to expose his anus to the frisking officer." N.Y.S. Department of Correctional Services Directive # 4910, at 3 (reproduced at Defendant's Response to Plaintiff's Request for Documents, at Exh. A.). When an inmate is transferred to a new facility, he is strip frisked when leaving his facility, but "shall not be strip frisked upon admission [to the new facility] without probable cause." N.Y.S. Department of Correctional Services Directive # 4933, at 3 (reproduced at Defendant's Response to Plaintiff's Request for Documents, at Exh. A.).

 Plaintiff claims that his constitutional rights were violated on October 1, 1992, when he was strip frisked despite his religious objections. I find that this claim does not survive summary judgment. Strip frisks pass constitutional muster, even if the strip frisk is conducted without probable cause, so long as the search is reasonable and not abusive. *See Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Show v. Patterson*, 955 F.Supp. 182, 192 (S.D.N.Y.1997) (citing *Duamutef v. Leonardo*, No 91 Civ. 1100, 1994 WL 86700, at *5 (N.D.N.Y. Mar.7, 1994); *Jermosen v. Coughlin*, No. 87 Civ. 6267(RJW), 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993), *aff'd*, 41 F.3d 1501 (2d Cir.1994)). An inmate challenging a strip frisk must "meet[] the burden of establishing the unreasonableness of the search." *Hurley v. Ward*, 549 F.Supp. 174, 184 (S.D.N.Y.1982). Plaintiff, here, challenges the strip frisk as a violation of a tenet of his religion. Complaint, at 15, ¶ 32. However, *Hurley* stated "[i]t is not unreasonable to require inmates to remove their clothing, including their underwear, to permit a visual inspection of the naked body." *Id.* at 186. "The religious tenets of the Muslims in the prison setting must give way to penological

and security requirements of the prisons." *Id.*

Furthermore, the *Hurley* consent decree, in which this plaintiff was the lead plaintiff,[8] permits strip searches and strip frisks of Muslim inmates "in those situations and under those conditions that they may be performed on other inmates." Consent Decree, at 8 (reproduced at Defendants' 3(g) Statement, at Exh. E.). Plaintiff does not dispute that this strip frisk occurred in the same circumstances and manner as it would on other inmates. In other words, plaintiff does not claim that other inmates were not required to submit to a strip frisk before transferring to another facility. Thus, plaintiff's claim regarding the October 1, 1992 strip frisk must be dismissed as the search did not violate plaintiff's rights.

## VII. *Deprivation of Property*

 I construe plaintiff's claim that defendants destroyed his eyeglasses as a due process claim for deprivation of property under the Fourteenth Amendment. Such a claim, however, cannot lie in federal court if the state courts provide an adequate remedy for the deprivation of that property. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 542–43, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988) (citations omitted). New York provides such a remedy in § 9 of the New York Court of Claims Act which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. *See DeMaio v. Mann*, 877 F.Supp. 89, 95 (N.D.N.Y.1995), *aff'd*, 122 F.3d 1055, 1995 WL 595089 (2d Cir.1995); *McCorkle v. Walker*, 871 F.Supp.

---

**8.** I take judicial notice that this is not the first time that plaintiff has objected to defendants' strip search or strip frisk procedures. *See Shabazz v. Lungen*, No. 88 Civ. 9137(LLS), 1990 WL 91758 (S.D.N.Y. June 22, 1990), *aff'd*, 927 F.2d 594 (2d Cir.1991); *Hurley v. Ward*, 448 F.Supp. 1227 (S.D.N.Y.1978), *aff'd in part, rev'd in part*, 584 F.2d 609 (2d Cir.1978). Plaintiff admits that he has repeatedly challenged the strip search and

strip frisk procedures in state correctional facilities. *See* Transcript of Tier III Hearing Held on October 13, 1992, at 5 (reproduced in Defendants' 56.1 Statement, at Exh. Q ("Hurley:... Now over the years, since I've been in prison, you know I object to strip frisks on the basis, grounds of ____. I've even got this matter in court.").)

555, 560 (N.D.N.Y.1995); *Forman v. Coughlin,* No. 93 Civ. 8412(LAK), 1994 WL 708150, at *1–2 (S.D.N.Y. Dec.20, 1994) ("New York has adequate remedies [for deprivation of property claims] via recourse to the New York Court of Claims. The Constitution requires nothing further."). Because New York State provides an adequate post-deprivation remedy for destruction of his property, plaintiff may pursue his claim in state court.

Plaintiff's failure to avail himself of the state procedures does not convert his cause of action into a constitutional due process claim. *See Franco v. Kelly,* 854 F.2d 584, 588 (2d Cir.1988) ("*Parratt* continues, even after *Daniels v. Williams,* to stand for the proposition that 'section 1983 cannot be made a vehicle for transforming mere civil tort injuries into constitutional injuries.' " *Id.* (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987))). Because plaintiff was not deprived of his property without due process of law in that he had an adequate remedy to vindicate his loss, his claim for relief under § 1983 must be dismissed. *See Love v. Coughlin,* 714 F.2d 207, 208–09 (2d Cir.1983) (*per curiam* ).

VIII. *Verbal Threats*

Plaintiff claims that on October 1, 1992, defendants "said and continued to utter words to the effect of 'nigger' and 'coon' We have been waiting on you a very long time, and we are going to kill your 'black ass' when you come out if you do not voluntarily submit to and comply with the strip search procedure." Complaint, at 8–9, ¶ 21.

▆ To the extent plaintiff seeks to assert a claim of verbal abuse, this Court notes that verbal harassment or profanity alone, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983. *Del Carpio v. Walker,* No. Civ. A. 95 Civ. 1502(RSP)(GJD), 1997 WL 642543, at * 6 (N.D.N.Y. Oct. 15, 1997) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (*per curiam* ); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997)); *see Ramirez v.*

*Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996); *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996); *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Beal v. City of New York,* No. 92 Civ. 0718(KMW), 1994 WL 163954, at *6 (S.D.N.Y. Apr.22, 1994), *aff'd,* 89 F.3d 826, 1995 WL 722263 (2d Cir.1995); *Hurdle v. Ackerhalt,* No. 92–Cv–1673, 1993 WL 71370, at *1–2 (N.D.N.Y. Mar.8, 1993) (allegations of threats and harassment do not rise to the level of a Constitutional violation).

▆ Plaintiff's complaint does not allege that defendants inflicted any physical injury on him in conjunction with their verbal taunts. Rather, plaintiff only asserts that defendants threatened to inflict physical injury. *See* Complaint, at 8, ¶¶ 20–21. In his opposition papers to defendants' summary judgment motion, however, plaintiff claims for the first time that "defendants imposed physical injury and the wanton infliction of pain, *physically* and *psychologically,* during the incidents and events of January 12, 1990 and October 1, 1992, including the articulation of racist words before, during and after the fact." Plaintiff's Opposition # 2, at 4, ¶ 8 (emphasis in original); *see* Plaintiff's Opposition # 1, at 5, ¶ 8 ("defendants brutalized and further tortured and sadistically and maliciously beat me in retaliation because of my litigation endeavors and because I did not voluntarily submit to a strip frisk. They also uttered racial slurs at me."); Plaintiff's Opposition # 3, at 6, ¶ 10 ("the defendants uttered racial slurs at me and visited my person with racial violence and continued to subject me to disparaging remarks such as 'nigger' and 'coon' during these ordeals and episodes of racial violence upon my person and in retaliation against me."). Plaintiff's delay in asserting that he was injured until his response to defendant's argument that verbal threats without injuries are not actionable under § 1983 confirms the implausibility of plaintiff's new claim. *See* Defendants' Memorandum of Law in Support of their Motion for Summary Judgment Pursuant to R. 56.1, at i. Plaintiff offers no support for

these new assertions of injury, and only refers to them in the broadest possible terms.

 The analysis does not end there, however. Plaintiff also claims that as a result of defendants' taunts, he was emotionally and psychologically injured. Plaintiff's Opposition # 2, at 4, ¶ 8. Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus. See Jermosen v. Coughlin,* No. 87 Civ. 6267(RJW), 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993), *aff'd,* 41 F.3d 1501 (2d Cir.1994). Plaintiff's claim that defendants uttered racial slurs during constitutionally permitted searches does not rise to the level of the malevolent conduct described in *Jermosen,* where this court found the plaintiff suffered only *de minimus* psychological harm when correctional officers "approached Jermosen with their nightsticks raised in a threatening position" before conducting a strip frisk. *Jermosen,* 1993 WL 267357, at *6; *see also Show v. Patterson,* 955 F.Supp. 182, 192 (S.D.N.Y.1997) (name-calling and laughing by correctional officers during strip search is *de minimus* psychological harm). Thus, I find that plaintiff's allegations of any psychological and emotional scars attributable to defendants' conduct to be *de minimus* under the facts of this case.

Given these circumstances, I find plaintiff's belated assertions of physical and psychological injuries to be insufficient to sustain his claim as a matter of law. *See Denton,* 504 U.S. at 32 (judges accorded "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."). This "court is fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons. The court does not condone this; it merely recognizes that racial slurs do not deprive prisoners of the 'minimal civilized measure of life's necessities,' and thus do not constitute an eighth amendment violation." *Morgan v. Ward,* 699 F.Supp. 1025 (N.D.N.Y.1988) (quoting *Williams v. Pecchio,* 543 F.Supp. 878, 879–80 (W.D.N.Y.1982) (other citations omitted)).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment dismissing the complaint against the defendants in its entirety.

**SO ORDERED.**